IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- vs -<br><br>KEVIN NIXON,<br>CHRISTOPHER SEALEY, *el al.*<br>　　　　　　　　　　　Defendants. | CRIMINAL No.  06-102-02 (JDB) |

## GOVERNMENT'S MOTION TO RECONSIDER A PORTION OF THE COURT'S MEMORANDUM AND ORDER DATED JULY 28, 2008

The United States of America ("United States" or "Government") respectfully requests the Court to reconsider a portion of its Memorandum Opinion and Order dated July 28, 2008 [Document #235]. In support its Motion, the Government says:

*Nature of the Case*

The defendants before the Court are among twelve Trinidadian nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and with Hostage Taking Resulting in Death, both charges being in violation of 18 U.S.C. § 1203(a). According to the allegations of the superseding Indictment, beginning on or about February 1, 2005 and ending on or about April 15, 2005, Mr. Straker and his co-conspirators, embarked upon a common plan to obtain the money of American citizen, Balram Maharaj, who was a visitor to the Island of Trinidad and who had relatives there. The conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son, Dinesh Maharaj, and to hold Dinesh for ransom. However, the conspirators later discarded the initial plan and determined to kidnap Balram

Maharaj and sought to obtain a ransom of Mr. Maharaj's money, from Mr. Maharaj's relatives, for his release. On April 6, 2005, in accordance with their plan, Balram Maharaj was abducted, and a ransom of $3,000,000 Trinidad (approximately $500,000 US) was demanded for his release. Mr. Maharaj was held captive at a hideout in a mountainous jungle region of Trinidad. On or about April 13, 2005, Mr. Maharaj expired at the remote hideout, as he languished in the hands of the conspirators. Following Mr. Maharaj's death, members of the conspiracy dismembered his body and buried his body parts at another remote location in the mountainous jungle. By April 15, 2005, the ransom demands had ceased. In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a mountainous jungle region in Trinidad.

### The Court's July 28, 2008 Memorandum Opinion and Order

In its July 28, 2008 Memorandum Opinion and Order, the Court authorized the Rule 15 depositions of four witnesses, whose identities and alleged evidence were presented to the Court *ex parte* by one or more of the defendants. As a result, prior to receiving the Court's July 28, 2008 Memorandum Opinion, the Government was ignorant of the names of any of these four individuals and without any understanding as to what the defendant(s) had represented to the Court these potential witnesses would say. Even now, the Government's knowledge is limited to broad generalities. Nevertheless, the information contained in the Memorandum Opinion, page 10, concerning potential alibi witness Vincent Julien is sufficient for the Government to agree that, if Mr. Julien's testimony will be as represented, then his Rule 15 deposition should proceed. However, with regard to the three eyewitnesses to the kidnapping at the Samaan Tree Bar, Anand Gajadahar, Zyroon Gajadhar, and Gayadeen Boodhoo, *see* Memorandum Opinion, page 10, the Government asks the Court to reconsider its authorization of Rule 15 depositions.

<u>The Eyewitnesses to the Kidnapping</u>

Based upon the *ex parte* representations of Mr. Nixon's counsel concerning these three eyewitnesses, the Memorandum Opinion states:

> The indictment alleges that Nixon and Sealey were the only two defendants who actually entered the Samaan Tree Bar and physically removed the victim into a getaway car. Nixon proffers three Trinidadian witnesses at or outside of the bar who will provide a description of the assailants that allegedly does not match Nixon; Sealey also contends that these same witnesses will not identify him.
>
> Counsel for Nixon has interviewed these three witnesses regarding the possibility of travel from Trinidad to the United States to testify, and they have refused to do so. Therefore, they are unavailable. Moreover, the summary of their testimony strongly indicates that it will be material, as it consists of classic identification testimony by eyewitnesses to the abduction at the Samaan Tree Bar. Accordingly, the Court will grant Nixon's and Sealey's motions to conduct depositions of the following witnesses: Anand Gajadhar, Zyroon Gajadajr, and Gayadeen Boohoo.

[<u>Memorandum Opinion</u>, page 10]

As previously cited in the <u>Government's Response in Compliance With the Court's Order Dated July 17, 2008</u> [Document #232], in *United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994), the District of Columbia Circuit noted that the party seeking to conduct the deposition bore the burden of demonstrating such "'exceptional circumstances' necessitate the preservation of testimony through a deposition." *Id.* at 1124 (citation omitted). Moreover, the *Kelley* court provided guidance for measuring the existence or absence of the requisite "exceptional circumstances": "Critical factors toward meeting this burden include (1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial. ***Moreover, there is typically some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant.***" *Id.* at 1125 (emphasis provided).

Ordinarily, a witness' inability to identify a defendant – as opposed to a witness' *mis*identification of another as the perpetrator – is not considered exculpatory. *See, e.g., Johnson v. United States*, 544 A.2d 270, 275 (D.C. 1988) (Government witnesses who failed to make identification held unable to exculpate defendant "because the mere failure of a witness to make an identification is not exculpatory"); *see also Hughes v. Hopper*, 629 F.2d 1036-40 (5th Cir. 1980), *cert. denied*, 450 U.S. 933 (1981); *United States v. Rhodes*, 569 F.2d 384, 387-88 (5th Cir.), *cert. denied*, 439 U.S. 844 (1978); *United States v. Palmer*, 536 F.2d 1278, 1280-81 (9th Cir. 1976).

Turning to the eyewitnesses whose Rule 15 depositions were authorized by in the Court's Memorandum Opinion, eyewitness Zyroon Gajadhar testified on June 5, 2008, in Washington, D.C., in the *United States v. David Suchit* trial. (A copy of the transcript of Mrs. Gajadhar's testimony in the *Suchit* trial is attached hereto.) In Mrs. Gajadhar's testimony, she indicated she was unable to identify the two gunmen. In particular, Mrs. Gajadhar testified, when asked what she had done when she saw the men with guns: "I got frightened, and I had my face like this. And I started to pray and scream." [6/5/07 PM Transcript, at 11/19-11/21] When Mrs. Gajadhar testified "I had my face like this," she covered her face with her hands in the courtroom, thereby demonstrating she could not at that point see the perpetrators. When asked on cross-examination whether Mrs. Gajadhar could testify whether or not Mr. Suchit was either of the men who abducted the victim at gunpoint, Mrs. Gajadhar testified: "I didn't make out anybody, ma'am." [Id., at 17/6-17/9]

With regard to the other two "eyewitnesses" identified in the Memorandum Opinion, the Government proffers it expects the other two listed "eyewitnesses" would provide similar

testimony – that neither of them could positively identify either of the gunmen *and* that neither of them has provided a misidentification through a photo-array. In fact, this event took seconds and was terrifying. In the *Suchit* trial, Mrs. Gadjadhar was asked what the other patrons at the bar were doing during the abduction of the victim. She responded: "They stooped down and hide, and some of them were lying down in the bar and panicking. Like myself, frightened." [Id., at 11/22-11/25]

The Government is mindful that, *at some point*, a witnesses' physical description of a perpetrator can be so dissimilar to that of the defendant that it becomes the equivalent of a misidentification. As an extreme example, if a witness at the Samaan Tree Bar would testify that s/he was *positive* that the two gunmen were one-legged, Caucasian, pigmy, children, when Mr. Nixon and Mr. Sealey are clearly full-grown, well-nourished, two-legged men who are obviously of African heritage, then such a witness's description could properly be viewed as exculpatory. However, because the Government is not privy to the descriptions proffered *ex parte* to the Court by Mr. Nixon's attorney, it is unable to determine for itself whether or not the descriptions are so vastly different as to qualify as "exculpating" the defendant under *Kelley*.

In the Government's view, factors that ought to be material to such an evaluation would include, but not necessarily be limited to: (1) how long did the eyewitness have to view the perpetrator; (2) how close was the eyewitness to the perpetrator; (3) what were the lighting conditions; (4) was the eyewitness's view free from obstruction; (5) how *truly* dissimilar was the witness's description of the perpetrator from a fair and accurate description of the defendant *at*

*the time of the crime;*[1] and (6) how *positive/certain* was the witness about the accuracy of the physical description(s) s/he provided?[2] Of these factors, (5) and (6) are likely the most compelling.

Because the Government does not have access to the *ex parte* proffer presented to the Court by Mr. Nixon's attorney, and because one of the three eyewitnesses – Mrs. Gadjadhar – has previously testified in Washington, D.C., that she is unable to identify either of the two gunmen, and because the Government expects the other two identified eyewitnesses would provide similar testimony, and because a witnesses' inability to identify a perpetrator is not generally considered exculpatory evidence, and because *Kelley* indicates that Rule 15 depositions should be limited to testimony that exculpates the defendant, the Government respectfully requests that the Court reconsider its Memorandum Opinion and Order to the extent it authorizes the Rule 15 depositions of the three listed eyewitnesses at the Samaan Tree Bar.

---

[1] A witnesses may say the perpetrator was "tall" or "short," or 'heavy" or "thin," or "dark complected" or "light complected" -- none of which has much value unless it measured against some <u>objective</u> standard. In the eyes of a four foot ten inches tall witness, virtually every adult could be described as "tall." Moreover, it is material if the defendant's physical attributes have changed since the time of the crime. For instance, has the defendant lost or gained significant weight following the date of the crime? Has he cut, or grown out, or dyed his hair? Has he had dental work that added or removed a gold-colored top-front incisor tooth?

[2] It is not at all uncommon for witnesses to traumatic events to say "guess" or they "think" the person may have had X, Y, or Z physical characteristic. Here, the degree of certainty is very important to a meaningful analysis.

WHEREFORE, the Government respectfully requests that the Court reconsider a portion of its Memorandum Opinion, as set forth above, and decline to authorize the Rule 15 depositions of eyewitnesses Anand Gajadhar, Zyroon Gajadajr, and Gayadeen Boohoo.

        Respectfully submitted,

        JEFFREY A. TAYLOR (D.C. Bar No. 498610)
        United States Attorney

        /S/

By: _____
        BRUCE R. HEGYI (D.C. Bar No. 422741)
        Assistant United States Attorney
        Federal Major Crimes Section
        555 Fourth Street, N.W., Room 4848
        Washington, D.C. 20530
        (202) 305-9637
        (202) 353-9414 (fax)
        www.bruce.hegyi@usdoj.gov

        JEANNE M. HAUCH
        Assistant United States Attorney
        National Security Section
        555 Fourth Street, N.W., 11th Floor
        Washington, D.C. 20530
        (202) 514-5776

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served upon the following counsel, electronically, on this 8th day of August, 2008:

Steven R. Kiersh
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015
*Counsel for Anderson Straker*

John J. Carney
Carney & Carney
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004
*Counsel for Wayne Pierre*

Pleasant S. Brodnax, III
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for Kevin Nixon*

Patrick M. Donahue
Donahue Law Firm
18 West Street
Annapolis, MD 21401
*Counsel for Christopher Sealy*

_____/s/_____
Bruce R. Hegyi
Assistant United States Attorney